2 Dec 61

# FIRE INSURANCE—CHARGE TO JURY—EVIDENCE.

[Circuit Court of Huron County.]

## LOUIS PHILLIPS v. THE OHIO FARMERS' INSURANCE CO.

1. EFFECT OF UNTRUTHFUL STATEMENTS IN APPLICATION—RIGHT TO MAINTAIN ACTION ON POLICY WHERE PROPERTY IS HELD BY TRUSTEE—EFFECT OF PROPERTY'S BECOMING VACANT—CONDITIONS SUBSEQUENT.

An action was brought by L. P. against the O. F. Insurance company upon a policy of insurance issued by said company, covering both realty and personalty, to recover for a loss by fire, of the property so insured. The company, in its answer, set up several specific defenses, substantially as follows:

*First*—That the plaintiff, in applying for said insurance, was required to make a written statement as to whether there were any mortgages on the property, and as to the value of the same; that the plaintiff stated that there was a mortgage of $2,000, and that the property was worth $7,500; that there was in fact, at the time of such application, a mortgage of $4,000 upon the property, and the value thereof was not nearly as great as was stated by plaintiff, and that, by the terms of such application and policy, such statements were a warranty and condition precedent to the right of the plaintiff to recover, if such statements were false.

*Second*—That subsequent to the issuance of such policy, the real estate insured, was transferred by said L. P. to one M. P., contrary to the conditions of such policy.

*Third*—That the property so insured had been allowed to remain vacant and unoccupied, or that it was occupied by tenants, contrary to the terms of the policy, thereby avoiding it.

*Fourth*—That at the time of such loss, an action to foreclose certain mortgages upon said property, and for judgment, was pending, and that the sheriff was proceeding to sell said property by virtue of an order of sale issued by the court in said action, which, it was claimed, operated to avoid the policy.

The plaintiff replied, that the application for such insurance was taken by defendant's agent who wrote out all of the various answers appearing in the application; that plaintiff, in all the statements made to the agent, told the truth as it then existed; and that if any errors occurred in the written answers, they were the errors of defendant's agent, and not of the plaintiff; but it was not denied that there was more than $2,000 mortgage indebtedness on the property insured.

The testimony disclosed that such transfer was made by L. P. to said M. P., to be held by her in trust for L. P., although such fact was not alleged in the reply.

*Held: First*—That whether the insurance company had knowledge at the time of said mortgage liens, and whether there had been any intentional fraud on the part of the plaintiff in making his application for insurance, were questions to be submitted to the jury under proper instructions from the trial court.

*Second*—That said L. P. had the right to maintain such action against the insurance company in his own name, but the fact of such trust should have been averred in the reply.

*Third*—The fact that said property became vacant and unoccupied would not absolve the insurance company from liability under said poli , unless the risk was thereby increased, and whether said property did become vacant, as well as whether the risk was increased, was a question to be determined by the jury.

*Fourth*—A condition arising since the making of such policy cannot avoid it, unless the risk is thereby increased, and the burden of proving that it is thereby increased, is on the defendant.

'2. DIVISIBILITY OF CONTRACT OF INSURANCE.

Such contract of insurance is divisible and severable, and although such policy might be void as to the realty, because of the risks becoming increased by such mortgage lien, under proper circumstances the plaintiff could recover for the loss of the personalty.

3. RULE GOVERNING CONDITIONS PREDECENT AND SUBSEQUENT.

In insurance policies conditions subsequent are governed by the same rule that governs conditions predecent.

4. RULE AS TO SUBMITTING ABSTRACT PROPOSITIONS OF LAW TO JURY.

Abstract propositions of law should not be given to a jury, but requests for charge should be moulded to fit the facts of the case as claimed by the respective parties.

5. EFFECT OF CROSS-EXAMINING WITNESS ON MATTER FOREIGN TO ISSUES.

In such action, the insurance company's answer did not allege that such fire was of an incendiary origin, or that said property was burned or procured to be burned by either said L. P. or M. P., but at the trial the court allowed defendant's counsel to cross-examine said M. P. for the purpose of tending to show that the fire was of incendiary origin, and that she either burned the property or procured it to be burned. *Held:* It was error for the court to allow such cross-examination for such purpose.

HAYNES, J.

This case is prosecuted for the purpose of reversing the judgment of the court of common pleas. The action was brought by Louis Phillips in the court of common pleas against the Ohio Farmers' Insurance Company upon a certain policy of insurance, and such proceedings were had in that court that a verdict was rendered against the plaintiff, and to reverse that judgment and set aside that verdict, this proceeding in error is prosecuted. Since the case was tried at least one very important decision has been rendered by the Supreme Court of this state upon questions that are at issue in this case. The case will have to be reversed and sent back for a new trial.

The requests for charge are quite numerous and upon request of the parties were given before argument, and after argument the general charge of the court to the jury was given.

I will not take the time to go through with the various requests for charge, but will state generally our views with regard to the law of this case, and I think by so doing, upon another trial the whole question of charge and request for charge will be changed and shape itself more in accordance with the decisions of the Supreme Court.

The plaintiff avers in his petition that he had insured, with the defendant company, buildings upon a certain farm which he then owned in this county, and upon certain personal property situated upon this place—a policy of insurance upon dwelling house No. 1 and cellar, $500; upon household furniture, clothing and provisions while therein, $200; barn No. 1, and shed, $300; hay, grain, fodder and seed while therein, $300; live stock while therein, and against lightning on the farm, $200; farm implements, wagons, carriages, and harness while in barn or barns insured therein, $200.

Plaintiff set up the fact that he had made proofs of loss and presented them, but that the party defendant had refused to pay, and that thereupon he had brought his suit.

The defense has, first, admissions as to certain matters and a general denial as to the residue. There are some four or five special defenses. The first refers to the declarations that were required to be made by the applicant in his written application for insurance upon his property. The particular part that is complained of relates to the questions that were put to him, as is stated, as to whether there were mortgages upon the property, and it was replied that there was a mortgage of two thousand dollars, and in regard to the value of the property, that the property was worth $7,500. It is averred that there was, in fact, at that time, a mortgage of four thousand dollars upon the property, and that the value of his property was not nearly so much as was stated. But, it is claimed

by the terms of the application and policy, that that was a warranty and its truth-fulness is a condition precedent to the right of the plaintiff to recover. The other defenses relate to matters that arise subsequent to the insurance. One of the defenses is that there had been a transfer of the title, and as it was claimed, the land had been conveyed to Margaret Phillips who, as it appears, was the wife of the plaintiff.

Another defense was that the property had been allowed to remain vacant and unoccupied, or that it was occupied by tenants, and that by virtue of a provision of certain clauses of the policy, that avoided the policy. Another defense was that there had been a suit commenced to foreclose certain mortgages upon the property which was then pending, and for judgment at the time of the fire; and that the property was being offered for sale by the sheriff of the county, and it is claimed that this is a violation of certain clauses in the policy.

Charges were requested to the court upon these various points upon both sides and general propositions were given to the jury.

It will be seen that these defenses may be divided into two classes, one, as to matters that occurred prior to the issuing of the policy, and the others that occurred subsequent to the issuing of the policy.

There was also a question raised during the trial in regard to the right of the plaintiff to recover in this case for the personal property that was insured, even though the jury might find against the plaintiff upon the real property—upon the buildings.

It is perhaps proper to say that the house and barns were both totally destroyed, and with them, as it is claimed, a large amount of personal property which was covered by this policy of insurance.

In reply to these various defenses, it was set up in the reply that was filed in the case, that the application was taken by an agent of the company who wrote out all of the various answers that appear in the application. It was set up further that there had been insurance upon this property by the defendant company for a period of many years—twenty years, perhaps—and that the policy had been renewed from time to time and that this was simply a renewal of the former policy, although in form, it was a new policy, taken upon a new application. It is claimed also by the plaintiff below, and testimony was offered to prove, that the plaintiff, in all the statements that he made to the agent, told the truth as it existed, and if any errors occurred in the written answers, it was the error of the agent and not the error of the plaintiff herein. It was not denied, however, as we understand, by the answers, that there was in fact, a mortgage upon the property of more than two thousand dollars.

In regard to the condition precedent, there are two questions arising in the case; one was, how far it would avoid the policy on the specific property itself; the second was, how far it would avoid the whole policy.

It was claimed on the part of the plaintiff that he might recover for the personal property, although as a matter of fact, he might not recover for the real property. We think that question has been largely settled in this case by the case of *Coleman & Co.* v. *The Insurance Co.*, in the 49 Ohio State, and in the cases that are therein cited. I read from page 310 in that case: "A policy of fire insurance issued by the defendant, which, for a premium in gross, insured the plaintiffs to the amount of two hundred dollars on their storehouse, and thirty-eight hundred dollars on their stock of goods therein, contained a condition that, 'if the building intended to be insured stands on ground not owned in fee simple by the assured, the policy shall be void, unless consent in writing by the company be endorsed thereon.' Within the period covered by the policy, the house and goods were destroyed by fire; and, it appeared that the plaintiffs did not own in fee simple, the ground on which the building stood. In an action on the policy: *Held*, That the contract is severable; and that the breach of the condition as to the title to the land, does not defeat the plaintiffs' right to recover for the loss of the stock of goods insured by the policy."

The case is quite lengthy and a large number of cases are cited by the judge of the Supreme Court who delivered the opinion in the case. I can only recommend to counsel in this case to read that decision, to shape carefully in the future with reference to it, the charges he desires to be given to the jury.

Now, whether this policy would be defeated by a violation of this warranty will depend upon several things. As I have said, it is claimed by the plaintiff here that the answers were written by the agent of the company; it is claimed that he told the truth to the company in regard to the condition of the property, and that they had full knowledge in regard to the liens on the same. That question is a question that should be submitted to the jury for proper consideration, under the decision of the case I have cited, and other decisions that have been made by the Supreme Court. If the assertion was made knowingly and willfully, and was knowingly and willfully false, we suppose there is no question but that the plaintiff would be barred from recovery, so far as the buildings themselves were concerned; but it should be submitted to the jury, whether or not these representations were true that these answers were written by the agent of the company, and whether the plaintiff had correctly informed him and he had full knowledge at the time in regard to these mortgages, and whether there had been any intentional fraud on the part of the plaintiff.

It will be observed in this case of *Coleman* v. *The Insurance Company*, that there are many cases cited that come almost substantially within the same facts that are set forth, or proven in this case. In regard to the conditions that have arisen since the making of the policy, which should avoid the policy, a decision was rendered by the Supreme Court of this state last month which has a direct bearing upon the matters in issue. It was the case of *Myron C. Moody* v. *The Amazon Insurance Company*, 52 O. S., 12, and was error to the circuit court of Ashtabula county. We only have the syllabus of the case as yet. In the second syllabus the following statement was made of conditions precedent:

"The conditions precedent, performance of which the plaintiff is required to plead in an action on such a policy, include only those affirmative acts which are necessary in order to perfect his right of action on the policy, such as giving notice and making proof of the loss, furnishing the certificate of the magistrate when required by the policy, and, it may be, other acts of like nature."

(I call attention to this in reference to the same question that arose in evidence, which I shall speak of later on.)

"Conditions which provide that the policy shall become void, or inoperative, or the insurer relieved wholly or partially from liability, upon the happening of some event, or doing, or omission to do some act, are matters of defense, and to be available must be pleaded, and their breach alleged."

3d. "When the action is upon such a policy issued since the passage of the act of March 5, 1879, to regulate contracts of insurance of buildings and structures (Revised Statutes, sections 3643, 3644), and there has been no intentional fraud on the part of the insured, an answer which alleges the breach of a condition that the insurer shall not be liable 'for loss or damages in or on vacant or unoccupied buildings unless consent for such vacancy or non-occupancy be indorsed' on the policy, is insufficient, unless it is also averred that the risk was thereby increased; and if the allegations of the answer be put in issue, whether the building insured became vacant, or unoccupied, or the risk was increased, are questions for the jury, upon both of which the defendant has the burden of proof."

The case of the insurance company against Leslie, in the 47 Ohio State, p. 409, has a bearing upon this question, as affected by the statutes of the state of Ohio, and of course, by the decisions of the Supreme Court of this state. I will read from the syllabus:

"The act of March 5, 1879, 'to regulate contracts of insurance of buildings and structures' (now sections 3643 and 3644 of the Revised Statutes), applies to

all policies issued since it wen' into effect, insuring any building or structure in this state against loss or damage by fire. The neglect or omission of the company's agent to make the examination of the property and fix its insurable value, as the statute requires, cannot prevent its application to a policy issued by the company. or defeat or affect the operation of the statute."

2d. "The statute is founded upon considerations of public policy; its purpose being to exact diligence and care on the part of insurance companies, to avoid improper risks and over insurance by requiring them to cause their agents to make personal examination of the property, a full description thereof, and fix its insurable value, as well as to protect the insured against unreasonable forfeitures and defenses. The more effectually to accomplish these results, the statute holds the company liable on its policy, unless after its issue, a change occurs increasing the risk without its consent, or the insured has been guilty of intentional fraud and in case of the total loss of the property by fire, the measure of the liability is fixed at the amount mentioned in the policy, upon which the insurer received a premium. The statute cannot be regarded as conferring upon the assured a mere personal privilege which may be waived by agreement. It molds the obligation of the contract into conformity with its provisions, and establishes the rule and measure of the insurer's liability."

We had occasion to examine this question in a case that arose in Williams county at the June term, 1891, the case of *Peoples' Mut. Fire Ins. Co.* v. *Bowersox, Receiver*, 3 Ohio Circ. Dec., 218. In that case there was a clause in the policy by which the company would not be liable by virtue of any policy issued by it for incumbrance procured or suffered to accrue covering property therein specified, or any part thereof. There had been a judgment rendered in that case upon two notes with cognovit in the usual form, in an action below, and it was claimed that the placing of these liens, or permitting them to be placed upon the property by giving this cognovit, avoided the policy. We followed the same doctrine that is laid down in the 47 Ohio State, and held that it did not avoid the policy, unless it was shown that the risk was increased and the burden was upon the defendant to prove that. Those rules, we suppose, apply to all the matters set up subsequent to the issuing of the policy.

In regard to the bringing of the suit, that was brought in the name of Louis Phillips. It is shown in evidence that subsequent to the making of the policy, the property had been conveyed to Margaret Phillips. That is not denied in the reply. Evidence was offered to show that the conveyance was made in trust for the plaintiff, Louis Phillips. It was claimed in testimony that Louis Phillips had become perhaps weak in mind. or his faculties a little impaired and for the purpose of protecting the property, under the advice of counsel, the legal title of the property was placed in the name of Mrs. Phillips, and in trust for Louis Phillips, who was, in fact, the real owner of the property.

That particular fact was not set up in the reply. We think, of course, it ought to have been, because it is a very material and important matter; but we think, from that state of facts, that the plaintiff would have the right to commence an action, if he chose, in his own name. It is true that under section 4995, an executor, administrator or guardian, a trustee of an express trust, may bring an action in his own name without joining with the other party.

There are a large number of requests that were made by counsel to be given to the jury before argument, both on behalf of the plaintiff and on behalf of the defendant. The statute permits propositions of that kind to be submitted to the court and the court should be required to either give them or refuse to give them. The difficulty with many of these propositions is that they are very general and it is a dangerous thing to give abstract propositions of law to a jury. A request should be so molded as to fit the facts of the case as they are claimed, at least, by the respective parties, and the court should be asked then to charge that if the jury find the facts to be so and so then the law would be so and so. That is to

say that, finding the facts to be so and so by the jury, the law should be stated with that distinctness and care which is to guide the jury in coming to a conclusion in regard to respective rights and liabilities of the parties under the laws of the land.

The court, if I understand the record correctly, refused to give the proposition in substance—that even if the plaintiff could not recover for the value of the buildings, that he might recover, under proper circumstances, for the personal property. That is to say, as we understand it, the court construed the contract to be one and indivisible, inasmuch as the clause of the policy providing that in case there should be any change in the title or any part thereof, or that the same should be encumbered by mortgage or otherwise, without the written consent of the party, then the policy shall be void. I have pointed out that tne Supreme Court of this state have taken a different view in regard to that class of policies and that the charge of the court in that respect should be so modified as to meet the views of the Supreme Court of the state.

As to conditions subsequent, the Coleman case I think settles that question. The views of the Supreme Court of this state are that the rule is the same with regard to conditions that are subsequent as it is with regard to conditions. that are precedent. They follow the same general rule. My own conclusion is, from the decisions, that conditions subsequent follow the same as conditions precedent.

There is another matter that is referred to here in the record, and that is the examination of the witness, Margaret Phillips. She was called and examined by the plaintiff in regard to the occupancy of the buildings and in regard to the contents of the buildings at the time of the fire, and some other matters; and then, upon cross-examination, counsel for the defense propounded this class of questions: On cross-examination, questions were asked and answers were given for the purpose of showing the character of the witness and her interest in the case, and tending to show, first, that tne witness was at and before the time of the fire, the real owner of the property burned, she having received the deed of the same from Phillips; that the witness had known before the fire that the property had been mortgaged for about four thousand. dollars; that she had known before the fire that a mortgage had been foreclosed: and the property was being advertised for sale by the sheriff the same week, or a few days after the fire; that witness was desirous of bidding the property in, and to that end was seeking to raise money; and further, for the purpose of tending to show that the fire in question was of incendiary origin and that she either burned. the buildings or property insured, or procured the same to be burned.

" For the purposes aforesaid, the following questions were asked and allowed. by the court:

"Had not Arthur, the mortgagee, brought suit to foreclose the mortgage, and was it not advertised for sale under that proceeding at the the time of the fire?' Was not the farm deeded to you by your husband after the policy was issued?"

In regard to the first question, that perhaps is proper, because the allegation of the plaintiff was that he was the owner of the property at the time it was insured and he left that matter standing as a fact, that he was the owner at the time the fire occurred. That was put in issue by the answer. It might be competent, under that state of pleadings, for the defendant to show that he was the owner at the time the fire occurred. The other questions refer entirely to matter that arose upon the defense set up by the company. Save and except, I think, the question in regard to the incendiary origin of the fire—that she either burned the buildings and property insured, or procured the same to be burned— there was no allegation in the answer in any form that the buildings were burned by the plaintiff, or indeed that the fire was of incendiary origin.

Now, the question as to whether this fire was of incendiary origin was a question entirely foreign to this issue, unless it was connected directly with parties to this suit, because the policy of insurance covers incendiary fires as well

as accidental fires, provided the fires are not set by the party himself. Then they proposed to show that she either burned the buildings and property, or procured the same to be burned. The law in Ohio in regard to cross-examination of witnesses is somewhat different in different parts of the state. I had occasion, I remember, several years ago, in connection with the court I was then sitting with, to examine that question. It is said to be the practice in a large portion of the state, to require counsel upon cross-examination, to limit himself entirely to the cross-examination of such matters as have been referred to by plaintiff in his examination in chief; but I think the rule in this district has been, to allow the defendant to cross-examine the plaintiff's witnesses upon any matters at issue upon which the plaintiff himself might produce testimony—with this limitation or qualification, that the defendant shall not be permitted to go into matters of defense in his cross-examination of plaintiff's witnesses.

There are many reasons in support of that rule, and that is the rule that has been laid down also by the Supreme Court of the state. It is true that in cross-examination of a witness, at times, the witness is allowed to be asked about collateral matters for the purpose of testing his memory and some matters of that kind. It has been allowed to ask the witness if he has not been convicted of crime sometime for the purpose of affecting his credibility. But I suppose when a party goes into anything merely collateral for the purpose of testing the witness's memory, the court should guard jealously and carefully that the party shall not be allowed to treat the answers as proof of independent evidence before the jury. In a case of this kind, it was very easy to raise the issue where a party could offer testimony himself in regard to the origin of that fire. If the company believed that that fire was of an incendiary origin by the act or procurement of the plaintiff or of this witness, that matter could be averred and set up in their answer and testimony could be offered upon it. How far the witness might be examined upon that as to testimony in chief, is perhaps doubtful; however, she offered herself as a witness upon that issue and she probably would open herself to a full cross-examination in regard to the whole matter, but we think that the court ought not to permit counsel to go into matters of this kind without any issue for the purpose of getting independent testimony before the jury, or in attempting to, that would tend to show or throw suspicion upon the plaintiff, or a suggestion that she herself had been the cause of the fire; nor should he be permitted to go into those matters which are purely matters of defense. The burden of proof rests upon the company, by the decision of the Supreme Court, and it should have waited until such time as it had an opportunity to put its witnesses on the stand; then it could have opened up its case and probably that would have brought all these matters before the jury and would have given counsel ample opportunity to examine his witnesses.

We note that although the testimony was allowed to go to the jury, nothing was said by the court to the jury in regard to any limitation upon this testimony.

Now, for the reasons I have stated, the judgment of the court of common pleas will be reversed, the verdict set aside, and the cause remanded to the court of common pleas for a new trial.

*Stewart & Rowley*, for Plaintiff in Error.

*Andrews Brothers*, for Defendant in Error.